**Paul D. HAMILTON, petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C3-98-1114.

Court of Appeals of Minnesota.

Jan. 12, 1999.

Considered and decided by KALITOWSKI, Presiding Judge, SHUMAKER, Judge, and HOLTAN, Judge.

## OPINION

HARVEY A. HOLTAN, * Judge

The district court rescinded the revocation of respondent's driver's license, concluding that respondent's due process rights were violated by Minn.Stat. § 171.30, subd. 2c (Supp.1997), which imposes a 30–day waiting period before drivers whose licenses are revoked based on an alcohol concentration of .20 or more may be issued a limited license. We reverse.

## FACTS

Respondent Paul Douglas Hamilton was arrested and charged with DUI for operating his vehicle with an alcohol concentration of 0.23.[1]  Respondent did not have any prior alcohol-related offenses.  Respondent's driver's license was revoked for 180 days pursuant to Minn.Stat. § 169.123, subd. 4(e)(4) (Supp.1997) (providing that if test results indicate alcohol concentration of .20 or more, license shall be revoked for twice the period otherwise applicable).  Further, because respondent's alcohol concentration level was 0.20 or greater at the time of the violation, his waiting period for a limited license was 30 days, or double that of those with alcohol concentrations below 0.20, as provided by Minn.Stat. § 171.30, subd. 2c (Supp.1997).

Respondent filed a petition for judicial review, challenging the license revocation and asserting that his right to procedural due process was violated by the extended waiting period for a limited license.  The district court rescinded the revocation on that basis.

## ISSUE

Does the immediate prehearing revocation of a driver's license pursuant to Minn.Stat. § 169.123, subd. 4(e)(4) (Supp.1997), violate procedural due process guarantees for a first-time offender with an alcohol concentra-

Faison T. Sessoms, Minneapolis, for respondent.

Michael A. Hatch, Attorney General, Jeffrey F. Lebowski, Michael R. Pahl, Assistant Attorneys General, St. Paul, for appellant.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Respondent was administered an Intoxilyzer test pursuant to Minn.Stat. § 169.123, subd. 2 (1996).

tion of .20 or more because Minn.Stat. § 171.30, subd. 2c (Supp.1997), requires a 30–day waiting period for a limited license?

## ANALYSIS

■■■ "In evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law." *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). Accordingly, this court "is not bound by the lower court's conclusions." *Id.* (quoting *Sherek v. Independent Sch. Dist. No. 699*, 449 N.W.2d 434, 436 (Minn.1990)). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989).

A driver whose license is revoked under the implied consent law may apply for a limited license during the revocation period. Minn.Stat. § 171.30, subd. 1 (1996). The driver may use the limited license only to attend work, chemical dependency treatment or counseling, or, for a homemaker, to attend to the educational, medical, or nutritional needs of the homemaker's family. *Id.* The Commissioner of Public Safety may impose further conditions and limitations on the limited license. *Id.*

In 1994, the Minnesota Supreme Court reviewed the issue of

> whether the immediate *prehearing* revocation of a driver's license for violating the implied consent law still comports with due process, as this court held in *Heddan v. Dirkswager*, 336 N.W.2d 54 (Minn.1983), now that prompt hardship relief from immediate revocation is unavailable.

*Davis v. Commissioner of Pub. Safety*, 517 N.W.2d 901, 902 (Minn.1994). The court noted that at the time *Heddan* was decided, the law "reasonably provided for hardship relief." *Id.* at 905. After *Heddan*, the legislature amended Minn.Stat. § 171.30, subd. 2(a), so that no limited or hardship license was immediately available. At the time of *Davis*, the statute provided that a limited license was not available for 15 days to drivers without any prior revocation for violating section 169.121 or section 169.123; for those

with a prior revocation who submitted to testing and failed, the period was 90 days; for those with a prior revocation who did not submit to testing, the period was 180 days. *Davis*, 517 N.W.2d at 904 (applying Minn. Stat. § 171.30, subd. 2a (Supp.1993)). Although the court was "troubled by the lack of immediate hardship relief for first offenders," it was "not prepared to conclude" that the legislation violated "federal or state due process guarantees." *Id.*

After *Davis*, the legislature again amended the statute, so that it now provides that a driver with an alcohol concentration of .20 or more must wait 30 days to obtain a limited license. 1997 Minn. Laws 1st Spec. Sess. ch. 2, § 56 (codified at Minn.Stat. § 171.30, subd. 2c (Supp.1997)). The district court found that this waiting period violates respondent's procedural due process rights. We disagree.

■■■ A driver's license is an important property interest subject to due process protection. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). Any determination of the process due to protect against erroneous deprivation of a driver's license is guided by the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Mackey v. Montrym*, 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979) (using the balancing test and holding the Massachusetts implied consent laws constitutional). The three factors to consider include:

> "[1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903); *see also Heddan*, 336 N.W.2d at 59–60 (applying same test and upholding constitutionality of prehearing license revocation proceedings under Minn.Stat. § 169.123 (1982)).

■ The private interest affected here is the "continued possession and use of [the driver's] license pending the outcome of the hearing due him." *Montrym,* 443 U.S. at 11, 99 S.Ct. at 2617. The Supreme Court recognized that this interest is a substantial one because the state

> will not be able to make a driver whole for any personal inconvenience and economic hardship suffered by reason of any delay in redressing an erroneous suspension through postsuspension review procedures.

*Id.* Consideration of the private interest affected requires identification of the nature and weight of that interest. *Id.*

■ The weight given to the private interest in continued possession of a license depends upon three factors: "(1) the duration of the revocation; (2) the availability of hardship relief; and (3) the availability of prompt post-conviction review." *Heddan,* 336 N.W.2d at 60 (citing *Montrym,* 443 U.S. at 11–12, 99 S.Ct. at 2617–18). The availability of hardship relief has changed since our supreme court's examination in *Davis,* but we must determine whether that change renders the implied consent statute unconstitutional as a violation of due process. *See Davis,* 517 N.W.2d at 904 (analyzing effect Minn.Stat. § 171.30, subd.2a (Supp.1993), had on driver's due process rights when 15–day waiting period required for limited license for first offenders).

■ The 1997 change in the law, doubling the waiting period before a limited license may be issued, applies only to drivers whose alcohol concentration was .20 or more. As a first-time offender, respondent would have been subject to a 15–day waiting period under the former law, but he was instead subject to a 30–day waiting period. *See* Minn. Stat. § 171.30, subd. 2a(1) (1996); subd. 2c (Supp.1997). Despite this change in the availability of hardship relief, we recognize a seven-day temporary license remains available. *See* Minn.Stat. § 169.123, subd. 5a(c)(1) (1996). We also recognize that when *Davis* was decided, some drivers (those with a prior revocation) were subject to a 90–day waiting period for a limited license. 517 N.W.2d at 904. As it did when *Davis* was decided, the statute provides for a waiting period that increases with the severity of the conduct; as the length of the revocation period increases, so too does the length of the waiting period for hardship relief and limited license.[2] *Compare Davis,* 517 N.W.2d at 904 (citing Minn.Stat. § 171.30, subd. 2a) *with* Minn.Stat. § 171.30, subd. 2c (Supp.1997) (if "alcohol concentration was 0.20 or greater at the time of the violation, a limited license may not be issued for a period of time equal to twice the time period specified in subdivision 2a"). These periods are directly proportional, reflecting a rational plan for protecting the compelling public interest in highway safety. The availability of judicial review and the opportunity for immediate administrative review have remained unchanged since *Davis.* We emphasize, however, the importance of the availability of administrative review. *See* Minn.Stat. § 169.123, subd. 5b (1996) (immediate administrative review by commissioner with results in 15 days); subd. 5c (1996) (30 days to petition for judicial review); subd. 6 (Supp.1997) (hearing no later than 60 days after filing of petition for judicial review).

---

2. Minn.Stat. § 171.30, subd. 2a (1996) provides waiting periods of varying duration for limited licenses:

> (1) 15 days, to a person whose license or privilege has been revoked or suspended for a violation of section 169.121, 169.123, or a statute or ordinance from another state in conformity with either of those sections;
>
> (2) 90 days, to a person who submitted to testing under section 169.123 if the person's license or privilege has been revoked or suspended for a second or subsequent violation of section 169.121, 169.123, or a statute or ordinance from another state in conformity with either of those sections;

> (3) 180 days, to a person who refused testing under section 169.123 if the person's license or privilege has been revoked or suspended for a second or subsequent violation of section 169.121, 169.123, or a statute or ordinance from another state in conformity with either of those sections; or
>
> (4) one year, to a person whose license or privilege has been revoked or suspended for committing manslaughter resulting from the operation of a motor vehicle, committing criminal vehicular homicide or injury under section 609.21, or violating a statute or ordinance from another state in conformity with either of those offenses.

Given the availability of a temporary license and the *opportunity* for immediate administrative review, we are not prepared to conclude that the increase in the waiting period for a limited license imposes an impermissible burden on the interest in continued possession of a license. Further, in light of the 90–day waiting period for drivers with prior alcohol-related offenses that was noted and not invalidated in *Davis,* we find no basis for holding unconstitutional the 30–day waiting period applicable to some first-time offenders.

There is no indication that the risk of erroneous deprivation has increased since *Heddan* or that the compelling public interest in highway safety has diminished. *See Heddan,* 336 N.W.2d at 61–63 (analyzing risk of erroneous deprivation of driver's license and concluding prehearing revocation of license is justified by compelling public interest in highway safety). In balancing (1) the nature of the driver's interest in continued use of a license, (2) the risk of erroneous deprivation, and (3) the compelling interest in public highway safety, we conclude that the procedural protections still satisfy due process requirements. The temporary license and the availability of immediate administrative review provide sufficient protections to minimize the risk of erroneous deprivation.

### DECISION

The temporary license and the availability of immediate administrative review provide adequate due process protections for the prehearing license revocation of a driver whose alcohol concentration is alleged to be .20 or more and who is subject to a 30–day waiting period for a limited license. The district court's order rescinding respondent's license revocation is reversed.

**Reversed.**